**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**


**JELINDA STEWART**                                                  **PLAINTIFF**

**VERSUS**                              **CIVIL ACTION NO.  2:06cv137KS-JMR**

**JERRY LOFTIN, In His Individual Capacity; and**
**MISSISSIPPI DEPARTMENT OF TRANSPORTATION**              **DEFENDANTS**


<u>**MEMORANDUM OPINION AND ORDER**</u>

        This matter is before the court on an Amended Motion to Dismiss **[#35]** filed on

behalf of defendant Mississippi Department of Transportation pursuant to Rule 12(b)(6),

Federal Rules of Civil Procedure.  The court, having reviewed the motion, the response,

the briefs of counsel, the pleadings and exhibits on file and being otherwise fully

advised in the premises finds that the motion is not well taken and should be denied.

The court specifically finds as follows:


<u>**FACTUAL BACKGROUND**</u>

        The plaintiff began working for the Mississippi Department of Transportation

(MDOT) in September of 2003, as an Equipment Operator Material Handler.  She

started out working on a road crew of six to eight people and was supervised by

defendant Jerry Loftin (Loftin).  The plaintiff has alleged that she was a diligent

employee who loved her work, and had dreams of rising in the Department of

Transportation.  However, she claims that her career plans were frustrated because of

the sexual harassment and sexual assaults committed against her by her immediate supervisor, defendant Loftin.  She asserts that the sexual harassment began shortly after she began working with Loftin.

The sexual harassment allegedly included solicitations to engage in sex, sexually-demeaning language and offers of payment to the plaintiff for sex.  The plaintiff claims that the sexual harassment was so pervasive and severe that it caused her fear and altered her work conditions.  The plaintiff asserts that she tolerated the sexual harassment for a long time because she loved her job and feared that reporting the sexual harassment would cause her to be fired.  However, she finally reported the sexual harassment verbally to Chris Bryan (Loftin's supervisor), and district personnel director Phillip Coco, in September of 2004.

On or about September 24, 2004, a meeting was held between Todd Jordan (Assistant District Engineer for Construction), Phillip Coco, Chris Bryan and Loftin.  As a result of this meeting, Loftin was counseled that his behavior was unacceptable and that further inappropriate behavior would not be tolerated.  On October 11, 2004, the plaintiff was removed from Loftin's crew and placed in the office under the supervision of Chris Bryan where she stayed until July of 2005.

The plaintiff followed up her oral complaints with a written complaint to Coco on October 22, 2004.  The plaintiff further alleges that while Loftin was sexually harassing her, he was also committing similar acts of sexual harassment against another MDOT employee, Terilyn Hayes, who also filed a written complaint of sexual harassment on October 22, 2004.

The plaintiff alleges that the sexual harassment by defendant Loftin was well-

known throughout the agency and was well-known by executive officials of MDOT.

Nevertheless, the plaintiff contends that while she was removed from Loftin's direct

supervision when she made her complaints in the fall of 2004, Loftin was allowed

access to her and continued harassing her, although he was unable to continue the

sexual assaults because there were other persons present and thus the most severe

harassment temporarily ceased.  She contends, however, that she suffered various

undesirable job assignments and difficulties after she made her complaints about

Loftin.

In July of 2005, the plaintiff was moved under the supervision of Larry Bennett.

On December 1, 2005, the plaintiff was promoted to Administrative Assistant to Bennett

and she began sharing an office with him.  Shortly afterward, Bennett announced his

retirement effective February 1, 2006.   His open position was advertised and applicants

were interviewed.  Loftin was ultimately selected to replace Bennett.  During February

2006, before Loftin's promotion became official, the plaintiff alleges that he (Loftin)

appeared at her office door and told her that "he was gonna be in that office and that

they were going to be sweet and they were going to have an understanding."

The plaintiff reported this incident and the fact that she had previously been

sexually harassed by Loftin to the MDOT Human Resources Division in Jackson on or

about March 7, 2006.  The plaintiff was placed on administrative leave with full pay and

benefits from March 8 to March 30, 2006, while the defendant investigated.  Defendant

MDOT asserts that it then conducted a full investigation and even though it was unable

to corroborate the plaintiff's allegations of Loftin's previous harassment, it was decided

that she would be removed from Loftin's supervision.

3

Loftin was then removed to a different building at a different location and the plaintiff was re-assigned as an administrative assistant to Travis Boyle. The plaintiff's basic duties did not change nor were her salary and benefits affected. Significantly, the plaintiff was allowed to solely occupy her same office and was no longer required to share space therein.

On April 26, 2006, the plaintiff filed her EEOC charge against MDOT, alleging sex discrimination, sex harassment, and retaliation under Title VII. In her charge, the plaintiff alleged that it was a "continuing violation." On May 25, 2006, the plaintiff filed her Complaint in this court against Defendant Jerry Loftin, seeking actual and punitive damages for sex discrimination in violation of the equal protection clause of the Fourteenth Amendment, arbitrary governmental action in violation of the due process clause of the Fourteenth Amendment, and a state law claim of malicious interference with contract. In her Complaint, the plaintiff noted that she had previously filed her EEOC charge against MDOT.

On October 4, 2006, a Case Management Conference was held based on the plaintiff's original complaint against Loftin. Because the plaintiff had not received a right-to-sue letter on her charge against MDOT, this Court stated that the Case Management Conference would be rescheduled by the Court. On December 1, 2006, the plaintiff received her right to sue letter from the EEOC and on January 4, 2007, she filed her Corrected First Amended Complaint, adding claims of sex discrimination, sexual harassment and retaliation under Title VII against MDOT.

The plaintiff claims that she has been forced to seek medical assistance because of her extreme stress and fear and that this fear is the joint result of the severe

4

sexual harassment by Loftin and the MDOT's refusal to stop the harassment and its decision to retaliate against her because she has reported it.  According to the plaintiff, the retaliation in itself is the result of defendant's notifying other agency officers of the plaintiff's complaint of sexual harassment.  She thus alleges that her mental anxiety and stress are a result of joint violations of the United States Constitution by Loftin and of violations of the United States Constitution, under the Civil Rights Act of 1964 by the officers and employees of the Mississippi Department of Transportation.

The plaintiff contends that the Defendant, Mississippi Department of Transportation, is liable to her for:

> a. Sex discrimination and sexual harassment; and
> b. Retaliation for opposition to sex discrimination and harassment;

and that the individual defendant Loftin is liable to her for:

> a. Malicious discrimination against her on grounds of her sex in violation of the equal protection clause of the Fourteenth Amendment;
> b. Arbitrary governmental action in violation of United States Constitution Amendment Fourteen substantive due process clause;
> c. Malicious interference with her employment; and
> d. Intentional infliction of mental distress.

## STANDARD OF REVIEEW

The defendant MDOT has moved the court to dismiss this matter under Rule 12(b)(6) for failure of the plaintiff to state a claim upon which relief can be granted.  In ruling on a 12(b)(6) motion, the court may not go outside the pleadings, specifically the complaint and amendments thereto in this case.  "The Rule 12(b)(6) motion . . . only tests whether the claim has been adequately stated in the complaint."  5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at 298

(1990).

As the Fifth Circuit has stated, "We may not go outside the pleadings.  We accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff.  We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)(internal footnotes and citations omitted).  *See also, Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th Cir. 1994).

While a complaint need not contain detailed factual allegations to survive a 12(b)(6) motion, the United States Supreme court has held that a plaintiff's "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, _____ U.S. _____ , _____ , 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929, 940 (2007)(other citations omitted).  Of course, if any matters outside the complaint are considered, the motion is converted to one for summary judgment.  *See Murphy v. Inexco Oil Co.*, 611 F.2d 570, 573 (5th Cir. 1980).


**<u>SOVEREIGN IMMUNITY</u>**

Defendant MDOT first moves the court to dismiss what it perceives to be 42 U.S.C. § 1983 claims asserted against it by the plaintiff on the basis of sovereign immunity as recognized by the Eleventh Amendment to the United States Constitution and pursuant to case law interpreting who is a "person" within the meaning of Section

1983.  The plaintiff responds quizzically that she has not made any such claims and clarifies that she is only suing the MDOT for sex discrimination, sexual harassment and retaliation under Title VII, which applies with full force and effect to the state.  The court agrees that the plaintiff does not appear to be making any claims which would be foreclosed by the MDOT's assertion of sovereign immunity and this portion of the motion shall be denied as moot.

## SEX DISCRIMINATION/SEXUAL HARASSMENT

Although the plaintiff has characterized her claims as sex discrimination as well as sexual harassment, it appears to the court that the plaintiff's allegations tend to support only the theory of sexual harassment.  In order to support a claim of sexual discrimination, more aptly described as "gender discrimination," the plaintiff would have to offer proof that similarly situated male employees were treated more favorably than she was.  *See, Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L.Ed.2d. 207, 215 (1981).   She has not alleged such specific treatment in her Amended Complaint but instead has specifically alleged facts of sexual harassment of a discriminatory nature regarding her offending supervisor, Loftin, and the circumstances related thereto.   Nevertheless, the court is mindful that this review is conducted at an early stage in the proceedings and the only requirement incumbent upon plaintiff is that she properly plead a claim upon which relief is possible.

The defendant attacks the plaintiff's Title VII claim of sexual discrimination and/or harassment by asserting that the plaintiff did not timely file a charge of discrimination with the EEOC nor did she timely report such offending conduct to appropriate

authorities at MDOT in order to take advantage of remedies available to her.   MDOT also asserts that the plaintiff did not suffer a tangible employment action in order to advance a hostile work environment claim.

In response, the plaintiff argues that she was harassed for a period of years by Loftin, her previous supervisor, and that such conduct continued up through the date of the filing of her EEOC complaint in April of 2006 and that she did report the conduct to appropriate MDOT personnel as she was told to do.  She also asserts that she was ostracized, criticized and given demeaning work assignments because of her reporting Loftin's actions.

Without question, the filing of a timely charge of discrimination is a prerequisite to the maintenance of a Title VII action.  *See*, 42 U.S.C. § 2000e-5(e)(1).  Under § 2000e-5(e)(1) the claim must be filed within 180 days of the date the alleged unlawful employment practice occurred.  "Title VII requires persons claiming discrimination to file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the allegedly discriminatory practice occurs. . . . This limitations period begins to run from the time that the complainant knows or reasonably should know that the challenged act has occurred."  *Yates v. Mobile County Personnel Bd.*, 658 F.2d 298, 299 (5th Cir. 1981)(*citing Hamilton v. General Motors Corp.*, 606 F.2d 576, 579 (5th Cir. 1979); *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295, 1303 (5th Cir. 1979); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 931 (5th Cir. 1975); and *See, Delaware State College v. Ricks*, 449 U.S. 250,101 S.Ct. 498, 503-504, 506, 66 L.Ed.2d 431, 439-40, 442 (1980)).

8

The plaintiff's amended complaint asserts that the harassing conduct occurred beginning as early as 2003 and into March of 2006.  In order to show a continuing violation the plaintiff "must show an organized scheme leading to and including a present violation. . . such that it is the cumulative effect of the discriminatory practice, rather than any discreet occurrence that gives rise to the cause of action."  *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998) (other citations omitted).

The plaintiff's EEOC claim was filed in April of 2006 and alleges discriminatory conduct occurring from 2003 up to the filing of the charge.  The court is reviewing this matter on a motion to dismiss, not on summary judgment.  The plaintiff is not required to offer proof to survive a summary judgment challenge at this time.  She must only properly plead her claim.  The complaint and the facts viewed in the light most favorable to the plaintiff indicate that the she has pled a claim for which relief is possible based on her assertion of a continuing violation.

Where a plaintiff seeks to hold her employer vicariously liable for the alleged sexual harassment of her supervisor, the court must first determine whether the plaintiff has suffered a "tangible employment action."  *See, Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).  The *Casiano* Court instructs that if this court concludes that a tangible employment action was taken against the plaintiff, the case is classified as one of *quid pro quo* harassment and the employer is liable.  If however the court concludes that the plaintiff was not the subject of a tangible employment action then the claim is classified as a "hostile environment" harassment case and the employer has the opportunity to assert the *"Ellerth/Faragher* affirmative defense."  *Id.* at 283-84.

9

In order for the plaintiff to establish that her work environment was in fact hostile, she must prove:   "(1) [s]exually discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment."  *DeAngelis v. El Paso Municipal Police Officers Association*, 51 F.3d 591, 594 (5th Cir. 1995)(citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

In order to avoid vicarious liability because of Loftin's actions, MDOT must prove both that "(1) [they] exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise."  *Casiano*, 213 F.3d at 284, (citing *Burlington Industries Inc. v. Ellerth*, 524 U.S. 742 at 765, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)).  A careful review of the Amended Complaint leads the court to conclude that the plaintiff has adequately pled a claim of hostile work environment.  She is not required to offer proof that would defeat a summary judgment motion at this point, which appears to be what MDOT is arguing.


**<u>RETALIATION</u>**

The defendant MDOT attacks the plaintiff's retaliation claim by asserting that the plaintiff cannot show that she suffered an "adverse employment action" as a result of the alleged discriminatory conduct.  In order to establish a *prima facie* case of retaliation the plaintiff must ultimately prove that:  "(1) [she] engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a

causal connection exists between the protected activity and the adverse employment action." *Mattern v. Eastman Kodak Company*, 104 F.3d 702, 705 (5th Cir. 1997).  If the plaintiff is able to establish a *prima facie* case of retaliation, the burden of proof is then shifted to MDOT who "must then articulate a legitimate nondiscriminatory reason for the challenged employment action."  *Shackelford v. DeLoitte and Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999).  Of course, if the employer articulates a legitimate nondiscriminatory reason then "the inference of discrimination raised by the *prima facie* case" is defeated and "summary judgment is appropriate unless [the plaintiff] can prove that the [employer's] rationale is pretextual."  *Id.*

According to the plaintiff, the retaliation she allegedly suffered is the result of the defendant's notifying other agency officers of the plaintiff's complaint of sexual harassment.  Thus, it appears that the plaintiff is claiming retaliation in the first instance by being ostracized by her coworkers  because of her actions regarding her complaints against Loftin.  This argument is closely akin to her hostile work environment claim.

The Fifth Circuit spoke very clearly to the issue of coworker conduct as retaliation in the *Mattern* case, 104 F.3d at 707.  In that case the Court quoted with approval from an instruction that directed the jury

> Mere dirty looks or reluctance of co-workers to speak to an employee are not the types of adverse employment action prohibited by Title VII.  Merely placing a memorandum regarding an employee's performance in his or her personnel file does not in itself constitute an adverse employment action.

The Fifth Circuit continued

> Consistent with the retaliation instruction, our court has stated that "Title VII was designed to address ultimate employment decisions, not to

address every decision made by employers that arguably might have
some tangential effect upon those ultimate decisions". (citation omitted). .
. . Hostility from fellow employees, having tools stolen, and resulting
anxiety, without more, do not constitute ultimate employment decisions,
and therefore are not the required adverse employments actions. (citation
omitted). . . . In short, a reasonable juror could not find, as required by the
retaliation instruction, that these acts were condoned or directed by
Eastman for the purpose of establishing cause for discharge–an ultimate
employment decision.

*Id.* at 707-708.

In *Mattern*, the District Court (Magistrate Judge) had entered a judgment on a
jury verdict in favor of plaintiff for retaliation. The Court set aside the jury verdict and
held that the evidence submitted was not sufficient to support a jury verdict for
retaliation. The facts established in *Mattern* were more egregious than the facts that
are alleged in this case, however, the plaintiff has alleged that management either
promoted or at least condoned the alleged hostility of the plaintiff's coworkers toward
her and that such created untenable working conditions that led her to suffer physically
and emotionally. At this stage of the litigation, that is all that is required. The motion to
dismiss her discrimination claims shall be denied.


**STATE LAW CLAIMS/PUNITIVE DAMAGES**

The defendant MDOT finally moves to dismiss the plaintiff's state law claims and
punitive damages claims against it. However, as the plaintiff points out, she has not
brought any such claims against MDOT, so this argument is superfluous and the
defendant's motion in this regard is denied as moot.

IT IS THEREFORE ORDERED AND ADJUDGED that the Defendant MDOT's

12

Amended Motion to Dismiss **[#35]** is Denied for the foregoing reasons.  The parties

shall contact the Magistrate Judge within ten days of this order for the entry of a new

Case Management Order.

      SO ORDERED AND ADJUDGED this the 14th day of August, 2007.


                           *s/Keith Starrett*
                           UNITED STATES DISTRICT JUDGE